Kinkead, J.
The action is brought by the plaintiff for money due on a contract made between the parties. The contract provided that defendant should have the right to use the streets and alleys for constructing, maintaining and operating a telephone system for the period named in the ordinance, and upon the conditions ' named.
It was provided that defendant should pay to plaintiff, certain percentages — named in ordinance and contract — on the gross receipts from the rental of telephones.
The defendant was required to fully complete and fulfill all of the obligations of the contract.
The petition alleges that defendant commenced service in 1901, and that it has made payments to plaintiff of the percentages on January 27, 1902, February 9, 1902, and March 4, 1904.
It is alleged that the payments were made and accepted with the condition expressed in each voucher that the same were' not to impair the rights and privileges granted the defendant, and were not to be construed as admission by defendant of liability for the payments, or for any subsquent payment under the ordinances and contract.
Defendant failed and refused upon demand to pay any percentage for the year 1904, the amount claimed for that year being $3,179.84, and is the basis of this action.
The answer of defendant contains certain admissions, one being that the gross receipts for the year 1904 were $155,966, followed by a denial that there is any amount due or owing plaintiff from defendant.
The second defense avers:
‘ ‘ That said ordinance of May 8, 1899, No. 15032, and said contract between the city of Columbus and the Columbus Citizens Telephone Company entered into on the 5th day of June, 1899, and said ordinance of June 12, 1899, being ordinance No. 15291, each and all contained the further provisions in addition to the provisions of said ordinance and contract set out in the amended petition, that the defendant, the Columbus Citizens Telephone Company, its successors and assigns, should be granted the right and privilege, for the period of twenty-five years from *435 the date of the taking effect of said contract and ordinances, to enter into and upon and nse the streets, alleys, avenues, and other public ways of the city for the purpose of digging trenches and laying conduits therein, erecting poles, posts and supports, placing wires in said conduits’ and on said poles, and to do all other things necessary to enable said company, its successors and assigns, to successfully construct, maintain and operate a telephone exchange, toll lines and police and fire alarm system. That the digging of the trencehs, the filling of the same, replacing the pavements, and setting the poles and posts should be done so as not to unnecessarily interfere with the flow of water in any drains or gutters,' nor the passing and repassing of persons, teams and vehicles upon the public ways of said city, and that it should be done under the direction and to the approval of the city engineer, and in such manner as not to injure or interfere with the wires, gas or water pipes of other public utilities that might lawfully be in said streets, avenues and alleys at the time said trenches are dug by said company.
“That the said the Columbus Citizens Telephone Company, its successors and assigns, were required by said ordinance and contract to replace all portions of streets, alleys, avenues and other public ways in said city by it disturbed in the erection, maintenance and operation of its said system, in a good, substantial workmanlike manner, and the portions of said streets, alleys, avenues and other public ways so displaced were required by said contract and ordinances to be restored to as good condition as that in which they were prior to such disturbance, and all to be done at the cost and expense of’said defendant, the Columbus Citizens Telephone Company, its successors and assigns.
“And that said contract and ordinances further provide that if said company, its successors and assigns, neglected or failed to restore such portions of said streets, alleys, avenues or other public ways in said city, after ten days written notice given by the board of public works of said city to the manager or president of the company, its successors or assigns, the said engineer might do such work and collect the expense thereof, together with the cost of collection, from said telephone company, its successors or assigns, which fund, when collected, should be paid into the street fund of said the city of Columbus.
“And defendant avers that said portions of said contract and ordinances requiring defendant to restore said streets, alleys, avenues and other public ways to as good condition as that in which they were prior to such disturbance, and to pay the expense thereof, were separate from and in addition to the requirements *436 in said ordinances and contract relating to the payment of a percentmn of the gross receipts from the rental of the telephones contained in said ordinances and contract, and set out in said amended petition.
“And defendant avers that said ordinances and contract contained the further provisions that said the Columbus Citizens Telephone Company, its successors and assigns, should execute and deliver to the city of Columbus, a good and sufficient bond in the sum of $50,000 with sureties to the acceptance of the board of public works in said city, conditioned that said telephone company should construct its telephone exchange and save the city of Columbus harmless against all loss and liability for any claims which may arise against said city for injuries to persons or property, and that said company shall fully perform all the conditions of said contract on its part to be kept and performed, and that said bond should remain in full force and effect during the entire time of said contract.
“And defendant avers that it has fully complied with all the aforesaid provisions of said ordinances and contract; that it has executed the bond required by said ordinances and contract and has at all times, at its own cost and expense, restored the streets, alleys, avenues, and public ways of said city wherever the same has been disturbed by it in the construction of its telephone exchange system to as good condition as they were before such disturbance, and has at all times maintained the same in such condition; that it has paid all bills presented to it or demands made upon it by said city of Columbus for restoring said streets or for superintending the work of restoring said streets to their former conditions, and has in every way complied wth all the provisions and requirements of said contract and ordinances, save only the requirement to pay a percentage of its gross receipts from the telephone rentals to said city.
“Wherefore, the defendant having ful]y answered the amended petition asks that said amended petition may be dismissed and that it may go hence without day and recover its costs. ’ ’
The claims of defendant are that the city parted with no right or thing of value which can support a contract for the payment of the percentage now demanded by the city; that it has no authority in law to demand the same, and that the same is grossly excessive.
The allegation in the answer, of the work and expense of restoring the streets to as good condition as they wrere before the improvements were made, is made wdth a view of supporting the *437 claim that about all the work of supervision required of the city has been paid for by defendant itself.
The position of the telephone company is that the city not only had no authority to exact payment of percentage of gross receipts, but that it was limited to such compensation as would be reasonably required to restore the streets to their former condition. It was provided by contract, as alleged in the .answer, that the telephone company should restore 'the streets to their former condition at its own expense. Having performed that contractual duty, and paid all the costs thereof, the telephone company now contends by its answer, and by the law as applied to the facts, that it is not bound to pay the percentage for the reason that the city had nothing to give the company, that the company acquired its rights to use the streets of the city by authority of the statutes from the state, and hence, there was no consideration for that part of the contract.
The ordinance was enacted June 12, 1899. Section 3471 provided that the provisions of Chapter 4, Title II, relating to magnetic telegraph companies should apply to any company organized to construct any line, or lines, or telephone, and every such company shall have the same powers and be subject to the same restrictions as are applicable to magnetic telegraph companies. This section came into our statutes in the revision of 1880 as new matter.
It seems to be regarded as necessary to have special power conferred upon telephone or telegraph companies, engaged in business in any city to construct and maintain underground wires and pipes, or conduits. The Legislature passed an act for this purpose April 8, 1891 (88 O. L., 296), which was amended in 91 O. L., 205 (Bates Revised Statutes, 3471-1, Section 1, now General Code, Sections 9197 and 9198). This authorized underground wires, conduits, etc., when the consent of such city has been obtained (Section 3471, Revised Statutes, Code 9178, 9179), provides that if the telephone company appropriates lands, the subject of the easement of a street, alley, public way, within the limits, of any city, the mode of such use shall be such as shall be agreed upon between the municipal authorities and the company. Then follows the provision as to procedure in the pro *438 bate court in ease of failure of city and company to agree, the section closing:
“But nothing in this section shall be so construed as to authorize any municipal corporation to demand or receive any compensation for the use of a street, alley, or public way, beyond what may be necessary to restore the pavement to its former state of usefulness. ’ ’
Does this statute' apply to the case at bar ¶
In Farmer v. Telephone Co., 72 O. S., 526, 531, it is considered that:
“A telephone company gets its rights to go upon the streets, with its poles, wires, etc., from the state (Sections 3454-3471-8; now Sections 9170, etc*.), and the power of the municipal authorities in the premises is to agree upon, not the right to use, hut the mode of use. * “ * Beyond this, the municipality is not permitted to demand or receive any compensation heyond what may he necessary to restore the streets to their former state of usefulness.”
The court in this case further states:
“It follows * * * that the municipality possessed nothing in tLe way of a valuable right to bestow upon the company. ”
This is the basis of the claim now being made by defendant in this case; that the limit of the exactions that could have been made by plaintiff was the receipt of such compensation as may be necessary to restore its streets; that having made provision that the defendant should pay all the costs of restoring the streets, plaintiff could not demand the percentage because it had nothing to give defendant, as the right to go upon the streets was conferred upon the company by the state.
Another branch of this court has overruled a demurrer to the amended petition, thereby sustaining the right of the city to collect the percentage in so far as the facts stated in the petition warrant the same. While the contract and ordinance was attached to the petition, the facts therein contained, as they are now alleged in the answer, were not before the court at that time. The question now presented has not, therefore, been ad- ' judged by this court.
*439 The defendant seeks to avoid the payment of further yearly percentages of its gross receipts under the ordinances and its contract on the ground as stated that the plaintiff was without authority to exact the payment of a .percentage of its receipts, because as stated by Spear, J.:
“The municipality is not permitted to demand or receive any compensation beyond what may be necessary to restore the streets to their former state of usefulness. ’ ’
It has been contended that the company having accepted the contract, paid the percentages and operated under it, it can not now avoid the contract in the absence of a charge of fraud against the city.
Unless there is a difference between an obligation voluntarily assumed by a telephone company to pay percentages upon its receipts, and one assumed by such company to furnish free service and to fix rates, this point is answered by Farmer v. Telephone Co., 72 O. S., 526.
In that case an ordinance was passed wherein, at the solicitation of the company, it fixes rates. The court held that the company could not be required.by a court of equity to comply with the ordinance, notwithstanding its voluntary' action, and the fact that the company obtained a benefit which it would not have otherwise obtained in a mode of use of-its streets more beneficial to it and more convenient to the public, made no difference. The decision was upon the theory that the statute gave the city no power to make exaction, its power being limited to compensation sufficient to restore the streets to former state of usefulness.
If a city provides by contract that the company shall itself restore the streets to their former state of usefulness at its own expense, it should not be permitted to exact additional compensation without any definite purpose not authorized by law.
Spear, J., in the ease just cited, p. 532, said:
“It follows # # # that the municipality possessed nothing in the way of a valuable right to bestow upon the company. Hence, the promises of the company to do what it was not and could not by the city be required to do, was a naked promise, without- consideration. ’ ’
*440 The doctrine of this case applies, provided Section 3461 (Code 9179), is to be considered as the rule of exacting compensation. The question, however, must in my judgment be decided solely with reference to Section (R. S. 3471-1, Sec. 1) 9197, General Code. It provides:
“Any company organized under the laws of this * * * state, and owning and operating a telephone exchange, * * * in any city in this state, may construct and maintain underground wires and pipes, or conduits1 and other fixtures for containing, protecting and operating such wires in the streets and public ways of said city, when the consent of such city has.been obtained therefor,” etc.
The ordinance and contract in this ease provided for maintaining not only poles and wires, but for digging trenches and laying conduits in streets.
The power and rights conferred originally by the chapter on telegraph and telephone companies only provided for the location and erection of lines of magnetic telegraph, and the appropriation of so much land as it deemed necessary for the erection and maintenance of its telegraph poles, piers, abutments, wires and other necessary fixtures, etc. General Code, Sections 9170 and 9172 (R. S. 3454.)
In Telephone Co. v. Cincinnati, 73 O. S., 64, the telephone company applied to the city for use of the streets, asking it to prescribe the manner of the use of its streets. The city refused and the matter was taken to the probate court. It was proposed to occupy the streets with poles, wires and underground conduits.
The probate court adjudged that all wires be placed in underground conduits or subways. Error was prosecuted. The Supreme Court held that the probate court had no power to grant a telephone .company the right to put its wires and apparatus in conduits under the streets of a city in the absence of the consent of the municipal corporation.
Spear, J., in delivering the opinion, expresses the view that the general .power conferred upon telephone companies providing as the statutes did, before Section 3471a, Section 1 (now Section 9197) was enacted, only for the erection of necessary fixtures, including posts, piers and abutments necessary for the wires, *441 excluded by reference the idea of conduits in subways. Attention s then called to the fact that the power to place and maintain wires underground was enacted in 1891 in Section 3471-1, Bates, and that consent of the city was, therefore, absolutely essential to this mode of construction and use.
The conclusion necessarily followed in that case that under Section 3461, now Sections 9178, 9179, the probate court had no power to exercise jurisdiction of a proceeding to direct the mode of use by a telephone company by providing that it should be by the construction and maintenance underground, where the municipality had not given its consent at all.
As the statutes then stood, Section 3471a, Section 1, Bates, and now provide, Section 9197, the municipality must give its consent to construct conduits before anything can be done by either city or company, looking to an agreement as to the mode of use or by way of providing for compensation.
The court in Telephone Co. v. Cincinnati, supra, did not and could not consider the question presented by the pleadings in this case.
Here the city has given the consent required by Section 3471a, Bates (Section 9197 Code), and by its agreement with the company has regulated the mode of use of the streets and fixed the compensation and enacted a certain percentage of the gross receipts of the company for each year graduated upon the amount thereof.
The court held in Zanesvilie v. Tel. Co., 64 O. S., 67, and reiterated in 73 O. S., 77, by Spear, J., that the proceeding in the probate court “is practically an appropriation; that is, it partakes of the character of an exercise of the right of eminent domain. ’ ’
Whether the municipality has an easement or owns the fee in the streets affects the question but little, because the taking of the streets for use of a telegraph company, being an additional servitude, is an exercise of the power of eminent domain.
In the case of telephone companies, however, the question is different. The law in this state seems to be well established that telephone lines, when the surface of streets only -is used, is not an additional burden on the streets of the city. The power to *442 grant a franchise to such company to establish its lines and to use the streets for that purpose is granted by the state to be regulated by the municipality. If the wires are to be placed underground, it would seem that such use was extraordinary and an additional servitude. Legislation authorizing such use to be granted upon consent of municipal authority was essential and appropriate when the fee of the street is in the private owner and the easement in the city, and use thereof is to be made by use of the underground. It may be that both parties, city and owner, are interested.
If the telephone lines underground is to be regarded as an additional burden, and if, as the Supreme Court said, this is of the nature of an exercise of the right of eminent domain, the quaere arises whether the state had power to limit the compensation to the amount necessary to restore' the streets.
I come back to the case of Tel. Co. v. Cincinnati, supra, as to whether that is decisive of the question here. Spear, J., argues-that the “section authorizing the construction of conduits being special provisions enacted long after the general provisions of Section 3461, and by the application of familiar rules of construction, must be regarded as exceptions to the general provisions of previous statutes. ’ ’ He argues further that:
“It is not to be inferred that the municipal authorities are stripped of all power to finally determine any matter relating to the general subject; * * * that by no statute is power given any tribunal to authorize permanent structures upon or in, or the use of any street, which will incommode the public, the dominant purpose being to facilitate public travel.”
The question whether when a city does consent to the construction of underground lines, and does provide that the company pay all the costs of restoring the streets to their former state of usefulness, which take the place of the assessment of compensation for that purpose as contemplated by Section 3461, is still an open one, although, the dictum of Spear, J., above quoted, is directly in point.and is sound.
The question must now finally be determined whether the power of the city in making the contract was measured solely by *443 the provisions of Section 3471a, Section 1,Bates Statutes (General Code, Sections 9197, 9198), or, whether the two sections, Sections 3461 and 3471a, are to be considered and construed together. That is, whether when the municipality does give its consent to the placing of underground wires, it is to be governed by the limitation upon the city in demanding and receiving compensation prescribed in Section (3461) 9179.
The question has been difficult in solution, but I am now convinced after very careful consideration of the history of this legislation, that Section 3471a, Section 1, Bates Statutes (Sections 9197 and 9198, General Code), is to be considered as a separate and independent statute, designed to accomplish different purposes, and based upon different theories. It is not amendatory to any other statute, and is an exception to all others. The chapter on magnetic telegraph companies enacted many years ago, and made applicable to telephone companies, was intended to authorize the use of the surface only of streets. Section 3461, now 9179, provided a mode of procedure for regulating such use, and prescribed a limitation upon the compensation which a municipality could demand.
But, as stated, Section 3471a (Code 9197-8-9) was enacted as an independent and complete statute for an entirely different purpose, and as held by the Supreme Court, “by the application of familiar rules of construction, must be regarded as exceptions to the general provisions of previous statutes.” 73 O. S., 81.
This being a special power for-a special purpose, it must follow that the city had the incidental power to impose such reasonable conditions in giving its consent as the parties saw fit to agree upon in their contract. Having this power the contract between plaintiff and defendant must be viewed as are ordinary contracts between individuals.
The city has a valuable right to give, consisting of a franchise to use its streets, and the company saw fit to agree to the terms of the contract proposed by the city. It is a simple case of the company living up to its contract.
The ordinance and contract provides for the construction of the telephone wires on both the surface and sub-surface. While Section 3461 would apply to the exaction of compensation for the *444 construction on the surface it would not for that underground. It is impossible, however, to make any division of the amount assessed against the defendant. The fact that the. city may have exacted it all as the condition of giving its consent to the construction of conduits is sufficient.
Demurrer'to the entire answer is sustained. The first defense, so-called, is made up of admissions and a form of denial which is not authorized by the code. It is considered trivial in view of the facts. The second defense sets up the substantial claim of the defendant.
This conclusion is final so far as this court is concerned. All the essential facts are in the pleadings. Unless some showing may be made to the contrary by October 22, judgment may be entered upon the pleadings for the amount claimed in the petition.